IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MARYLAND CASUALTY COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION FILE |
| | : | NO. 1:13-cv-3056-TWT |
| SALON AVENUE SUITE 2, ET AL., | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFF MARYLAND CASUALTY COMPANY'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This is an insurance coverage dispute. Defendant Mark Storch ("Storch") is a convicted felon and registered sex offender who, along with his wife, Defendant Juliette Colon ("Colon"), owns Defendants Salon Avenue Suites 2 and Salon Avenue Suites, Inc. ("Salon"). Salon's business is renting suites to beauty professionals. Storch, Colon and Salon have been sued by eight (8) women (the "Underlying Plaintiffs") who allege Storch used hidden cameras to videotape them and other women while they were using Salon's restroom or in various stages of undress while receiving beauty treatments on Salon's premises ("Underlying Lawsuits").

The Underlying Plaintiffs allege Storch videotaped them and other women until

1

July 27, 2012, when two of the Underlying Plaintiffs discovered a hidden camera above a Brazilian Wax studio on Salon's premises. Within days of discovery, Storch was arrested, and, shortly thereafter, his probation from his prior felony conviction was revoked. Storch was eventually indicted on 25-felony counts of unlawful surveillance.

Plaintiff Maryland Casualty Company ("MCC") issued a commercial general liability policy to "Salon Ave Suites 2." MCC's first notice of the discovery of the hidden cameras, the events surrounding the discovery, or any claims or potential claims against Storch, Colon and Salon was on March 11, 2013, almost eight months (8) after the discovery of the hidden cameras. MCC filed this action seeking a declaration that it owes no duty to defend or indemnify Salon, Storch, or Colon in connection with the Underlying Lawsuits.

MCC is entitled to summary judgment on all of its claims for several reasons. First, Salon, Storch, and Colon breached the policy's notice condition by, in part, waiting almost eight (8) months to report the discovery of the hidden cameras to MCC. Second, the Underlying Lawsuits do not allege any damages for physical injury caused by an accident. Third, the Underlying Lawsuits allege that the damages sought were caused by intentional conduct. Fourth, the Underlying Lawsuits do not allege any claims arising out of Salon's business. Fifth, coverage is barred

by the knowing violation of rights of another and the willful violation of a penal statute exclusions. Finally, the Underlying Lawsuits do not allege any damages caused by an error or omission in the provision of barber and beautician services. Therefore, MCC requests that this Court grant it summary judgment that it has no duty to defend or indemnify Salon, Storch, or Colon for the Underlying Lawsuits or any claims arising out of the discovery of the hidden cameras.

## II.    FACTS AND PROCEDURAL HISTORY

### A. Storch Opens Salon after Being Released From Prison.

Between May 2004 and December 2008, Storch was in prison for felony charges of assault with attempt to rape and cocaine possession. (Stmt. of Mat. Facts ¶ 1.)[1] Following, Storch's release, he registered as a sex offender and began serving a 10-year probation term. (*Id.* at ¶¶ 2-3.) Before going to prison, Storch and Colon were dating, and continued to date through Storch's incarceration. (*Id.* at ¶¶ 4, 6.) After Storch's incarceration, and well aware of Storch's criminal past, Colon married Storch on March 6, 2009. (*Id.* at ¶¶ 5, 7.)

In late-2009, Storch and Colon began developing Salon as a "salon suite concept business" wherein they would lease private suite space to various beauty pro-

---

[1] All fact citations reference paragraphs in MCC's Statement of Material Facts. Copies of the relevant portions of the record are attached as exhibits to MCC's Statement of Material Facts.

fessionals to conduct their businesses. (*Id.* at ¶ 8.) Storch and Colon were the only officers and owners of Salon. (*Id.* at ¶ 9.) The services performed by several of the beauty professionals who rented suites required their customers to either be nude or partially nude. (*Id.* at ¶ 10.) The first Salon location was located at 2550 Sandy Plains Road in Marietta and opened in March of 2010 (the "Sandy Plains Location"), and a second location was later opened at 3120 Loring Road in Acworth (the "Loring Road Location"). (*Id.* at ¶¶ 11-12) Storch managed the daily operations of both locations. (*Id.* at ¶ 13.)

At some point, Storch installed hidden cameras at each Salon location above certain suites and in at least one bathroom (the "Hidden Cameras"). (*Id.* at ¶ 14.) Storch did not have permission from the tenants or their customers to install the Hidden Cameras. (*Id.* at ¶ 15.) The Hidden Cameras were not monitored by any security service but were connected to a recording device that Storch could access. (*Id.* at ¶¶ 16-17.) The Underlying Plaintiffs allege that Storch installed the Hidden Cameras for his own gratification and prurient interest. (*Id.* at ¶ 18.)

**B. Hidden Cameras Are Discovered And Storch Is Arrested.**

On July 27, 2012, Defendants Jane Doe and Mary Roe allege that they discovered a hidden camera at the Sandy Plains Location while Roe was waxing Doe's

genitals.[2] (*Id.* at 19.) Such procedures were a part of Roe's business and frequently required that customers be nude from the waist down. (*Id.* at ¶ 20.) To facilitate the procedure, Roe conducted her business in private with the door to her suite closed. (*Id.* at ¶ 21)

Following discovery of the hidden camera, Roe alleges that she called 911. (*Id.* at ¶ 22.) While waiting for the police, Roe alleges that Storch arrived at the Sandy Plains Location and confronted her concerning the hidden camera. (*Id.* at ¶ 23.) Roe alleges that Storch asked her to take him to see the camera but that she refused and told him that the police were on the way. (*Id.* at ¶ 24.) Roe alleges that Storch then went to a utility closet and removed a laptop computer to his vehicle. (*Id.* at ¶ 25.) Thereafter, the police arrived, questioned Storch, and impounded his vehicle. (*Id.* at ¶ 26.) Additionally, on July 27, 2012, the police executed a search warrant on Storch and Colon's home and took essentially all computerized devices. (*Id.* at ¶ 27.)

Colon was informed of the discovery of the Hidden Cameras on July, 27, 2012. (*Id.* at ¶ 28.) In fact, on July 29, 2012, Colon sent correspondence to the tenants at both Salon locations "apologiz[ing] for any inconvenience, confusion or frustration

---

[2] As noted in MCC's Complaint, Jane Doe and Mary Roe are pseudonyms. Consistent with the orders of the Cobb County State Court regarding their right to proceed anonymously, MCC has referred to these Underlying Plaintiffs as Jane Doe and Mary Roe in this lawsuit.

based on Friday's [July 27] events." (*Id.* at ¶ 29.) Subsequently, Colon spoke with each tenant and let them know that they could leave. (*Id.* at ¶ 30.) All but five tenants left immediately. (*Id.* at ¶ 31.)

Roe left her suite almost immediately after July 27, 2012. (*Id.* at ¶ 32.) Shortly thereafter, Colon attempted to obtain a liability release from Roe in favor of Salon, Storch, and Colon. (*Id.* at ¶ 33.) However, Roe, through counsel, refused to sign the release. (*Id.* at ¶ 34.) Shortly thereafter, Roe's attorney also made a demand for $500,000 for Roe's claims relating to the Hidden Cameras, which Colon ignored. (*Id.* at ¶¶ 35-36.)

On August 10, 2012, Storch was arrested for unlawful surveillance under O.C.G.A. § 16-11-62 based on the Hidden Cameras. (*Id.* at ¶ 37.) Following his arrest, the police conducted a search on the Loring Road Location and took a computer, which allegedly contained images of nude women in the restroom and in at least one suite. (*Id.* at ¶ 38.) On October 11, 2012, Storch agreed to a revocation of his probation for committing the offense of "Eavesdropping-Surveillance(F)" on July 12-14, and 27, 2012. (*Id.* at ¶ 39.)

Between February 1, 2013 and July 16, 2013, the Underlying Plaintiffs filed suit against Salon, Storch, Colon, and others relating to the presence of the Hidden Cameras at the Salon locations. (*Id.* at ¶ 40.) The Underlying Plaintiffs allege that

they were victims "of Eavesdropping-Surveillance by Defendant Storch" when, for several months prior to July 27, 2012, Storch videotaped them while using the restroom and/or while giving or receiving various hair removal services, such as genital or "Brazilian" waxing. (*Id.* at ¶¶ 41, 43.) Each Underlying Lawsuit asserts claims for, *inter alia*, invasion of privacy and intentional infliction of emotional distress as well as negligence claims based on vicarious liability and/or negligent hiring or retention. (*Id.* at ¶ 45.)

On July 25, 2013, Storch was indicted in Cobb County on 25 felony counts of unlawful surveillance under O.C.G.A. § 16-11-62, relating to the Hidden Cameras. (*Id.* at ¶ 46.) This criminal prosecution against Storch is pending. (*Id.* at ¶ 47.)

The first notice that MCC received of any allegations or claims against Salon, Storch, or Colon came on March 11, 2013 when MCC received a copy of Doe's lawsuit. (*Id.* at ¶ 48.) Prior to March 11, 2013, MCC had no notice of the discovery of a hidden camera above Roe's suite on July 27, 2012, almost 8 months earlier. (*Id.* at ¶¶ 49-50.) Further, prior to March 11, 2013, MCC had no notice of any of the events which followed that discovery, including the subsequent police investigation and Storch's arrest and incarceration. (*Id.*) Moreover, MCC had no notice of any of the actions taken by any of the tenants in response to the alleged discovery of the hidden camera, including the mass exodus of tenants and Roe's refusal to

7

sign a liability release, her retention of counsel, and her $500,000 demand. (*Id.*)

**C. The MCC Policies.**

MCC issued policy number PAS 04518405 for the policy period 11/15/10-11/15/11 and renewed for 11/15/11-11/15/12 (the "Policies"). (*Id.* at ¶ 51.) The Policies identify the named insured as "Salon Avenue Suite 2" and lists the Loring Road location as the mailing address. (*Id.* at ¶ 52.) The Policies provide that others can qualify as insureds under the Policies but only with respect to their duties as officers or directors of Salon Ave Suite 2. (*Id.* at ¶ 53.)

The Policies contain a notice condition precedent to coverage which requires, in relevant part, that MCC is notified "as soon as practicable" of an offense which may result in a claim, or if a claim is made. (*Id.* at ¶ 54.) It also requires an insured to "immediately send" MCC copies of "demands, notices, summonses or legal papers." (*Id.*)

The Policies also contain a Commercial General Liability Coverage Form which contains three separate insuring agreements. (*Id.* at ¶¶ 56-58.) First, Coverage A only applies for claims of "bodily injury" caused by an "occurrence." (*Id.* at ¶ 56.) "Bodily injury" is defined under Georgia law as physical injury, and "occurrence" is defined in relevant part as "an accident." Coverage A also contains exclusions for "bodily injury" expected or intended by the insured and for claims arising

out of the rendering or failure to render professional services. (*Id.* at ¶ 56.)

Coverage B only applies for damages because of "'personal and advertising injury' caused by an offense airing out of [Salon Ave Suites 2's] business." (*Id.* at ¶ 57.) Coverage B also contains exclusions for damages caused by the knowing violation of another's rights and damages arising out of the "willful violation of a penal statue or ordinance." (*Id.*)

The third insuring agreement is contained in the Barbers and Beauticians Professional Liability Endorsement ("Barbers Endorsement"). (*Id.* at ¶ 58.) The Barbers Endorsement provides coverage only for damages caused "by a negligent act, error or omission" in providing or failing to provide "barbers and beauticians services." (*Id.*) The Barbers Endorsement bars coverage for, "bodily injury," "personal and advertising injury," and damages which were expected, intended, or reasonably foreseen by the insured. (*Id.*)

### III.   ARGUMENT AND CITATION TO AUTHORITY

#### A. *The summary judgment standard.*

The party moving for summary judgment has the burden to demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). For issues on which the non-movant would bear the burden of proof at tri-

al, however, the moving party simply may show that there is a "an absence of evidence to support the non-moving party's case" or that there is "affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial." *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1116 (11th Cir. 1993).

## B. If MCC has no duty to defend, then it has no duty to indemnify as a matter of law.

Under Georgia law, if MCC does not have a duty to defend Salon, Storch or Colon under the Policies, then it likewise has no duty to indemnify either. *Allstate Ins. Co. v. Harkleroad*, No. 409CV011, 2010 WL 2076941, at*3 (S.D. Ga. May 24, 2010) ("if it is found that Allstate does not have a duty to defend on a claim, it will likewise not be required to indemnify"); *Shafe v. Am. States Ins. Co.*, 653 S.E.2d 870, 873, (Ga. Ct. App. 2007) (finding there was no duty to indemnify under the insurance policy where insurer had no duty to defend).

The duty to defend only arises when the underlying lawsuit alleges liability *potentially* within the policy's coverage. *Id.* Thus, the duty to defend is broader than the duty to indemnify. *Id.* Therefore, when the duty to defend is absent as a matter of law—i.e., because the insured's liability is not even *potentially* within coverage—coverage itself (the duty to indemnify) is necessarily absent as a matter of law as well. *Id.* As set forth below, MCC has no duty to defend Salon, Storch or Colon for the Underlying Lawsuits. Therefore, if this Court finds MCC has no du-

10

ty to defend Salon, Storch and Colon, under the terms of the Policies then it like-wise follows that MCC has no duty to indemnify either.

### C. Salon, Storch, and Colon cannot carry their burden to prove they complied with the notice condition in the Policies.

Salon, Storch, and Colon cannot carry their burden to prove they complied with the Policies' notice condition. *Lankford v. State Farm Mut. Auto Ins. Co.*, 703 S.E.2d 436, 438-39 (Ga. Ct. App. 2010) (failure to comply with a policy's notice condition bars coverage). The notice condition is a condition precedent to cover-age, and Salon, Storch, and Colon have the burden to prove that they complied with its requirements. *Id.* ("It is well established that a notice provision expressly made a condition precedent to coverage is valid and must be complied with, absent a showing of justification."); *see S.C. Ins. Co. v. Coody*, 957 F. Supp. 234, 237 (M.D. Ga. 1997) ("Compliance with a prompt notice provision acts a condition precedent to coverage . . . .").

Here, the notice condition contains three requirements:  (1) notice "as soon as practicable of an 'occurrence' or an offense which may result in a claim[;]" (2) no-tice as soon as practicable of a claim made or "suit" brought against an insured; and (3) immediate forwarding of "demands, notices, summonses or legal papers . . . ." (Stmt. of Mat. Facts ¶ 54.) MCC is entitled to summary judgment that it has no

duty to defend or indemnify Salon, Storch, and Colon in connection with the Underlying Lawsuits because they failed to comply with all three notice requirements.

Specifically, Salon, Storch and Colon failed to notify MCC "as soon as practicable" of the following events which ultimately resulted in the claims against them: 1) the discovery of a hidden camera by Doe and Roe on July 27, 2012; 2) the execution of a search warrant on Storch and Colon's home related to the Hidden Cameras on July 27, 2012; 3) Storch's arrest on August 10, 2013 related to the Hidden Cameras; 4) Roe's retention of counsel shortly after the discovery of the Hidden Cameras; and 5) Roe's refusal to sign a release for claims related to the Hidden Cameras shortly after their discovery. Finally, Salon, Storch, and Colon failed to "immediately send [MCC]" a copy of the $500,000 demand letter sent by Roe's counsel (collectively, all of these events are hereinafter referred to as the "Notice Events"). (*Id.* at ¶ 49.)

Despite all of the Notice Events which began on July 27, 2012, MCC did not receive notice of the any of the Notice Events until almost 8-months later when, on March 11, 2013, MCC received Doe's Lawsuit. (*Id.* ¶¶ 48, 51.) It is undisputed that Storch, Colon, and Salon[3] knew of the discovery of the Hidden Cameras and the

---

[3] Storch and Colon both testified that they were the only ones to run the Salon business and were both officers. (Stmt. of Mat. Facts ¶¶ 8-9, 13, 29-36.) Thus, Salon's knowledge of the events is the same as Storch and Colon.

subsequent Notice Events as they occurred. (*Id.* at ¶¶ 23-39.) It is simply common sense that the discovery of the Hidden Cameras and other Notice Events could result in a claim. In fact, like clockwork, the claims emerged almost immediately after the discovery of the Hidden Cameras. (*Id.*)

Under Georgia law, delays far shorter than the almost 8-month delay here have routinely been held unreasonable as a matter of law. *See Hathaway Dev. Co., Inc. v. Ill. Union Ins. Co.*, 274 Fed. Appx. 787, 790-91 (11th Cir. 2008) (affirming summary judgment where insured delayed 4, 5, and 8-months in notifying insurer of events underlying the claim); *Travelers Indem. Co. of Ct. v. Douglasville Dev.*, No. 1:07-CV-0410-JOF, 2008 WL 4372004, at *3-4 (N.D. Ga. 2008) (granting summary judgment to insurer where insured waited 4-months to provide notice of "an offense which may result in a claim"); *Bituminous Cas. Corp. v. J.B. Forrest & Sons, Inc.*, 209 S.E.2d 6 (Ga. Ct. App. 1974) (4-month delay unreasonable); *see also DS Waters of Am., Inc. v. Twin City Fire Ins. Co.*, No. 1:098-CV-1819-TWT, 2011 WL 1743716, at *2-4 (N.D. Ga. May 5, 2011) (granting summary judgment to insurer on 60-day notice provision) (Thrash, J.).

Thus, Storch, Colon and Salon's failure to provide MCC notice of the Notice Events for almost 8-months bars coverage as a matter of law. Therefore, MCC is entitled to summary judgment as a matter of law that it has no duty to defend or in-

demnify Salon, Storch, and Colon for any claims arising out of the Hidden Cameras, including, but not limited to, the Underlying Lawsuits.

### D. There Is No Coverage For The Underlying Lawsuits Under Any Of The Policies' Insuring Agreements.

Even if Salon, Storch and Colon could prove that they complied with the Policies' notice condition, which MCC denies, they cannot prove that there are any claims which fall within anyone of the three (3) insuring agreements in the Policies. As set forth below, the Underlying Lawsuits either fail to come within the insuring agreements or are otherwise excluded under the Policies.

#### 1. There Is No Coverage For The Underlying Lawsuits Under Coverage A.

##### i. Salon, Storch, and Colon cannot carry their burden to prove that the Underlying Lawsuits allege damages because of "bodily injury" caused by an "occurrence."

Under Georgia law, the party seeking coverage bears the burden to establish that claims fall within the insuring agreement. *See Chix v. Ga. Farm Bureau Ins. Co.*, 258 S.E.2d 208 (Ga. Ct. App. 1979). Coverage A in the Policies requires damages "because of 'bodily injury'" that is "caused by an 'occurrence.'" (Stmt. of Mat. Facts ¶ 56.) The Policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person[,] . . . includ[ing] mental anguish, mental injury, shock, fright or death <u>resulting from bodily injury, sickness or disease</u>." (*Id.* at ¶ 55.)

14

Under Georgia law, this definition of "bodily injury" requires that there be allegations of "physical injury to the body" and "does not include non-physical, emotional or mental harm" unconnected with a physical harm or injury. *O'Dell v. St. Paul Fire & Marine Ins. Co.*, 478 S.E.2d 418, 420 (Ga. Ct. App. 1996) (affirming grant of summary judgment to insurer because there were no allegations of physical harm and thus no claims of "bodily injury.").

Here, the Underlying Lawsuits do not seek damages for physical harm or injury sustained by any of the Underlying Plaintiffs. (Stmt. of Mat. Facts ¶¶ 40-45.) In fact, the Underlying Lawsuits make no allegations that the Underlying Plaintiffs were physically harmed or injured by Salon, Storch, or Colon. (*Id.*) Therefore, Salon, Storch, and Colon cannot carry their burden to show that the Underlying Lawsuits allege damages because of "bodily injury." *O'Dell*, 478 S.E.2d at 420.

Even if the Underling Lawsuits do allege claims for "bodily injury," which MCC denies, the Underlying Lawsuits do not allege such damages were caused by an "occurrence." The Policies define "occurrence" in relevant part as "an accident." (Stmt. of Mat. Facts ¶ 55.) Under Georgia law, the term "accident" means "an event which takes place without one's foresight or expectation or design." O.C.G.A. § 1-3-3(2); *Owners Ins. Co. v. James*, 295 F. Supp. 2d 1354, 1363 (N.D. Ga. 2003) (defining "accident" as "an unintended happening rather than one occur-

15

ring through intention or design."). Georgia courts have consistently held that an "accident" does not include intentional acts. *Mindis Metals, Inc. v. Transp. Ins. Co.*, 209 F.3d 1296, 1300 (11th Cir. 2000) ("an 'accident' does not include damage to persons or property when that damage is intentionally inflicted"); *James*, 295 F. Supp. 2d at 1363 ("'Accident' and 'intention' are . . . converse terms.").

Furthermore, Georgia courts have also consistently held that insurance policies do not cover any other claims as a concurrent cause of harm where, but for the harm that is not within the scope of the policy (i.e., intentional conduct), there would be no claim. *See Cont'l Cas. Co. v. H.S.I. Fin. Services, Inc.*, 466 S.E.2d 4 (Ga. 1996) (negligence claim not covered where policy barred coverage for claims "arising out of" criminal conduct because but for that conduct there would be no negligence claim); *Jefferson Ins. Co. of New York v. Dunn*, 496 S.E.2d 696 (Ga. 1998) (negligence claim not covered where policy barred coverage for injuries "caused by" an assault; but for the assault there would be no negligence claim).

The Court's rationale for this line of cases is that, by simply asserting another theory for a claim, every loss could conceivably be brought within coverage, regardless of whether the loss was caused by harm covered under the policy, a result that would "impermissibly alter the plain meaning of the [policy]." *Cont'l Cas. Co.*, 466 S.E.2d at fn. 4.

16

Here, the Underling Lawsuits allege that the Underlying Plaintiffs' claims are the result of Storch's intentional, criminal conduct of placing the Hidden Cameras above the restrooms and certain suites without permission from any tenant or tenant's customer in order to obtain images of nude women. (Stmt. of Mat. Facts ¶ 43.) These are no allegations of loss or injury resulting from an accidental act and, thus, could not be the result of an "occurrence." *Mindis Metals*, 209 F.3d at 1300. Furthermore, but for the intentional conduct of Storch there would be no claims against Colon or Salon. Thus, none of the alleged damages in the Underlying Lawsuits are caused by an "occurrence." *Cont'l Cas. Co., supra.* Therefore, MCC is entitled to summary judgment that it has no duty to defend or indemnify Salon, Storch and Colon for the Underlying Lawsuits as a matter of law.

### ii.   The Expected or Intended Injury Exclusion bars coverage.

Even if the Underlying Lawsuits allege damages because of "'bodily injury' . . . caused by an 'occurrence,'" which MCC denies, coverage would nonetheless be barred by the Expected or Intended Injury Exclusion. The Expected or Intended Injury Exclusion bars coverage for "'bodily injury' . . . expected or intended from the standpoint of the insured." (Stmt. of Mat. Facts ¶ 56.)

This exclusion focuses on whether the resultant loss or injury from an act was expected or intended, not whether an act was accidental. *Richardson v. Ga. Farm*

*Bureau Mut. Ins. Co.*, 678 S.E.2d 348, 349 (Ga. Ct. App. 2009) ("the policy exclusion is . . . applicable if the insured acts with the intent or expectation that bodily injury occur . . . ."). Moreover, the exclusion applies where there is evidence or allegations that an insured committed a crime or intentional tort. *Roe v. State Farm Fire & Cas. Co.*, 373 S.E.2d 23, 24 (Ga. Ct. App. 1988) (affirming grant of summary judgment to insurer because it is presumed the insured intended harm to child he molested).

Here, the exclusion applies because there is no doubt that Storch intended the harm he allegedly caused the Underlying Plaintiffs when he secretly videotaped them as alleged in the Underlying Lawsuits. There is no other expected outcome of installing hidden cameras and taping women without their consent in areas where women are routinely getting undressed or using the restroom. Furthermore, the Underlying Lawsuits allege that Storch's conduct in secretly recording them was intentional and illegal, and Storch admitted that he committed felony offenses of "Eavesdropping-Surveillance(F)" under O.C.G.A.§ 16-11-62. (Stmt. of Mat. Facts ¶ 39.) Just as in *Roe*, because of the criminal acts, it is presumed that Storch intended the harm he allegedly inflicted. Therefore, the exclusion bars coverage and MCC is entitled to summary judgment as a matter of law.

### 2.  There is no Coverage for the Underlying Lawsuits under Coverage B.

### i. *Salon, Storch, and Colon cannot carry their burden to prove that the Underlying Lawsuits allege damages because of "personal and advertising injury" arising out of Salon's business.*

Salon, Storch and Colon cannot carry their burden to prove the Underlying Lawsuits fall within the insuring agreement of Coverage B. *Chix, supra.* Coverage B in the Policies requires allegations of damages "because of 'personal and advertising injury' . . . caused by an offense arising out of your business . . . ." (Stmt. of Mat. Facts ¶ 57.) Under Georgia law, the phrase "arising out of" in an insurance policy means "had its origins in," "grew out of," or "flowed from." *Video Warehouse, Inc. v. S. Trust Ins. Co.*, 678 S.E.2d 484, 488 (Ga. Ct. App. 2009).

Here, there are no allegations in the Underlying Lawsuits of damages "arising out of" Salon's[4] business.[5] Salon's business was renting out suites to beauty profes-

---

[4] The Policies provide that the words "you" and "your" refer to the Named Insured shown in the Declarations. The Named Insured in the Declarations is "Salon Ave Suites 2." (Stmt. of Mat. Facts ¶ 59.)

[5] In the Underlying Lawsuits filed by attorney Todd Yates (Defendants Barron, Benedict, Bowen, Clark, McRae, and Miller (the "Yates Lawsuits")) there are no allegations of "personal and advertising injury" against Colon. (*Id.* at ¶¶ 40-45.) The term "personal and advertising injury" is defined in relevant part as "injury . . . arising out of . . . invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor . . . Publication in any manner, of material that that slanders or libels a person or organization …; Publication, in any manner, of material that violates a person's right to privacy . . . ." (*Id.* at ¶ 55.) Thus, at a minimum, MCC is entitled to summary judgment it has no duty to defend and indemnify Colon for the claims asserted against Colon in the Yates Lawsuits. *Harkleroad*, 2010 WL 2076941 at*3

sionals. (Stmt. of Mat. Facts ¶ 8.) The installation of the Hidden Cameras had no connection whatsoever to Salon's business. The only reasons to install hidden cameras in areas where women are routinely fully or partially nude or using the restroom without their consent is in connection with a personal or criminal endeavor.

In fact, the Underlying Plaintiffs allege that Storch videotaped them for his own gratification. (*Id.* at ¶ 18) Further, Storch faces criminal charges for his actions relating to the Hidden Cameras. (*Id.* at ¶ 46.) Therefore, any alleged claims of "personal and advertising injury" against Salon, Storch and Colon were not caused by an offense arising out of Salon's business, but rather, arising out of Storch's individual criminal conduct.[6]

### ii.    *The Knowing Violation of Rights Exclusion Bars Coverage.*

Even if the Underlying Lawsuits allege a claim for "personal and advertising injury" arising out of Salon's business, which MCC denies, coverage is barred for claims of "personal and advertising injury" "caused by or at the direction of the insured with knowledge that the act would violate the rights of another and would

(no duty to defend or indemnify if allegations not within coverage); *Shafe*, 653 S.E.2d at 873.

[6] There is no coverage for the claims against Colon and Salon under the Coverage B insuring agreement for the same reasons there is no coverage under the insuring agreement for Coverage A. Under Georgia law, insurance policies do not cover any other claims as a concurrent cause of harm where but for the harm that is not within the scope of the policy there would be no claim. *See Cont'l Cas. Co., supra.* Section D.1.i., *supra.*

inflict 'personal and advertising injury.'" (hereinafter the "Knowing Violation of Rights Exclusion") (*Id.* at ¶ 57.)

A recent case is directly on point for this matter. In *Travelers Prop. Cas. Co. of Am. v. Kansas City Landsmen, L.L.C.*, No. 1:11-CV-4401-WSD, 2014 WL 632282, at*3-4 (N.D. Ga. Feb. 18, 2014), the court granted summary judgment to an insurer on the exact same exclusion at issue here. The Court held that the exclusion applied because the underlying lawsuit solely alleged that the insured knowingly harmed the underlying claimants. *Id.* Here, we have the exact same situation.

There is no dispute that the Underlying Lawsuits allege that Storch intentionally and knowingly installed the Hidden Cameras above suites and in restrooms. (Stmt. of Mat. Facts ¶¶ 14-15, 18, 41-45.) They further allege that Storch intentionally recorded them while they were nude, partially nude or using the restroom, without their consent, which violates Georgia law. *See* O.C.G.A. § 16-11-62. Thus, just as in *Kansas City Landsmen*, the Knowing Violation of Rights Exclusion bars coverage for the Underlying Lawsuits.[7]

### iii. The Willful Violation of a Penal Statue Bars Coverage.

---

[7] The exclusion also bars all coverage for claims in the Underlying Lawsuits against Colon and Salon. Under Georgia law if "but for" the excluded conduct there would be no claims against a party, then the exclusion applies to all of those claims as well. See *Cont'l Cas. Co.*, *supra*; *Jefferson Ins. Co., supra.* Here, but for Storch's excluded conduct there would be no claims against Colon and Salon.

Coverage B also contains an exclusion for "personal or advertising injury" "[a]rising out of the willful violation of a penal statute or ordinance committed by or with the consent of any insured[.]" (Stmt. of Mat. Facts ¶ 57.) While there is no Georgia case law addressing this exclusion with these facts, at least two other Courts have applied identical exclusions to bar coverage in situations similar to the one in this case. *See Gillund v. Meridian Mut. Ins. Co.*, 778 N.W.2d 662, 667-73 (Wis. Ct. App. 2009) (exclusion applied to invasion of privacy claims alleging that insured videotaped his niece while nude and in the bathroom); *MGM, Inc. v. Liberty Mut. Ins. Co.*, 855 P.2d 77 (Kan. 1993) (exclusion applied to invasion of privacy claims alleging that insured recorded telephone calls through hidden microphones).

Here, the Underlying Lawsuits specifically allege that Storch knowingly and willfully violated O.C.G.A. § 16-11-62, Georgia's unlawful surveillance statute. (Stmt. of Mat. Facts ¶ 44.) In fact, Storch was ultimately indicted for violation of that very statute. (*Id.* at ¶ 46.) Moreover, the Underlying Lawsuits allege that Storch videotaped tenants and customers for his own gratification and prurient interest and would taunt them about his ability to view and listen to what transpired at the Salon locations. (*Id.* at ¶ 18.) Thus the Underlying Lawsuits fall directly within the plain language of the exclusion. *Payne v. Twiggs County Sch. Dist.*, 496 S.E.2d 690, 691-92 (Ga. 1998) ("Unambiguous terms in an insurance policy re-

quire no construction, and their plain meaning will be given full effect."). There-

fore, MCC is entitled to summary judgment as a matter of law.[8]

### 3. *There is no Coverage for the Underlying Lawsuits under the Barbers Endorsement.*

#### i. *Salon, Storch, and Colon cannot carry their burden to prove that the Underlying Lawsuits allege any damages because of providing or failing to provide "barbers and beauticians services"*

The insuring agreement for the Barbers Endorsement requires allegations of

"damages caused by a negligent act, error or omission . . . in providing or failing to

provide 'barbers and beauticians services.'" (Stmt. of Mat. Facts ¶ 58.) The Poli-

cies define "barbers and beauticians services" as "those activities customary in a

beauty shop or barber shop . . . ."[9] (*Id.*)

Here, there are no allegations that any of the Underlying Plaintiffs suffered inju-

ry or loss while receiving any beauty shop or barber shop services from Salon,

Storch, and Colon. (*Id.* at ¶¶ 14-21, 37-47.) To the contrary, the Underlying Plain-

---

[8] This exclusion also applies to the claims against Colon and Salon. *See* fn. 6.

[9] To the extent the Barbers Endorsement applies, which MCC denies, then any coverage under Coverage A is excluded because Coverage A bars claims for "'bodily injury' . . . arising out of the rendering or failing to render any professional service, including . . . b. Medical, cosmetic, dental, ear piercing, hair dressing, massage, physical therapy, veterinary, nursing, surgical or x-ray services, advice and instruction; . . . f. Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming." (Stmt. of Mat. Facts ¶ 56.) Likewise, the Barbers Endorsement bars coverage where Coverage A or Coverage B applies. (*Id.* at ¶ 58.)

tiffs allege that they were videotaped while using the restroom or while providing or receiving services to or from others. (*Id.*) Moreover, the mere existence of the Underlying Lawsuits (and the mass exodus of tenants) shows that Storch's elicit, illegal videotaping of the Underlying Plaintiffs was, in fact, very inconsistent with the provision of "those activities customary in a beauty shop or barber shop." (*Id.*) Therefore, Storch, Colon and Salon cannot prove that the Underlying Lawsuits fall within the Barbers Endorsement.

### ii. *The expected, intentional, or reasonably foreseen injury exclusion bars coverage.*

Even if the Underlying Lawsuits allege "damages caused by . . . 'barbers and beauticians services,'" which MCC denies, coverage is barred by the Barbers Endorsement's exclusion for expected, intentional, or reasonably foreseen injuries. Specifically, this exclusion bars coverage for "[d]amages expected, caused intentionally by or at the direction of the insured, or that should have been reasonably foreseen by the insured." (*Id.* at ¶ 58.) This language is similar to the Expected or Intended Injury Exclusion under Coverage A. Therefore, this exclusion bars coverage for the same reasons set forth in Section D.1.ii., *supra*.

### E. *Storch Is Not An Insured in His Individual Capacity.*

Finally, the Policies specify that Salon's officers, directors, and stockholders are insureds, "but only with respect to their duties as . . . officers or directors . . . [or]

their liability as stockholders." (*Id.* at ¶ 53.) Thus, to the extent Storch is being sued in the Underlying Lawsuits for actions unrelated to his duties as an officer or director of Salon, MCC has no duty to defend or indemnify him for the Underlying Lawsuits. Specifically, Storch's illegal acts were not taken with respect to the conduct of Salon's business. Here, the Underlying Lawsuits allege that Storch videotaped the Underlying Plaintiffs to satisfy his own prurient interest and gratification. (*Id.* at ¶ 14-21, 37-44.) Further, the nature of his alleged acts in secretly recording the Underlying Plaintiffs could only be for his own benefit, outside of his duties as an officer or director of Salon. (*Id.*) Therefore, Storch is not an insured, and MCC is entitled to summary judgment that it has no duty to defend or indemnify Storch as a matter of law. *Payne, supra*.

## IV.   CONCLUSION

Salon, Storch, and Colon cannot carry their burden to prove that they provided timely notice of the discovery of a hidden camera on July 27, 2012 or any of the subsequent events relating to the Hidden Cameras. Moreover, none of the Policies' coverages apply to any of claims asserted in the Underlying Lawsuits and, even if they did, coverage would be barred by one or more exclusions. Therefore, MCC is entitled to a judgment declaring that it has neither a duty to defend nor a duty to indemnify Salon, Storch, and Colon for the Underlying Lawsuits.

Respectfully submitted this 7th day of July, 2014.

/s/Christopher C. Meeks
Seth M. Friedman
Georgia Bar No. 141501
Christopher C. Meeks
Georgia Bar No. 371020
*Attorneys for Plaintiff*

Weissman, Nowack, Curry & Wilco, PC
One Alliance Center, 4th Floor
3500 Lenox Road
Atlanta, Georgia 30326
(404) 926-4500
(404) 926-4600 (Fax)
sethfriedman@wncwlaw.com
christophermeeks@wncwlaw.com

IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MARYLAND CASUALTY COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION FILE |
| | : | NO. 1:13-cv-3056-TWT |
| SALON AVENUE SUITE 2, ET AL., | : | |
| | : | |
| Defendants. | : | |

## <u>CERTIFICATE OF COMPLIANCE</u>

Counsel certifies that this filing is prepared with Times New Roman 14-point font in compliance with Local Rule 5.1.

This 7th day of July, 2014.

/s/Christopher C. Meeks
Christopher C. Meeks
Georgia Bar No. 371020
*Attorney for Plaintiff*

Weissman, Nowack, Curry & Wilco, PC
One Alliance Center, 4th Floor
3500 Lenox Road
Atlanta, Georgia 30326
(404) 926-4500
(404) 926-4600 (Fax)
christophermeeks@wncwlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 7, 2014, I electronically filed the foregoing **PLAINTIFF MARYLAND CASUALTY COMPANY'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** with the Court using the CM/ECF system which will automatically send E-mail notification of such filing to the following attorney of record:

<table>
<tr>
<td>J. Blair Craig, II, Esq.<br>blair@woodcraig.com</td>
<td>E. Brian Watkins, Esq.<br>brian@ebrianwatkinslaw.com</td>
</tr>
<tr>
<td>Richard G. Farnsworth, Esq.<br>RGF56@hotmail.com</td>
<td>Albert Maitland Yates, III, Esq.<br>tmy@kaufmanlaw.net</td>
</tr>
</table>

WEISSMAN, NOWACK,
CURRY & WILCO, P.C.
One Alliance Center
3500 Lenox Road, 4th Floor
Atlanta, Georgia 30326
(404) 926-4500
(404) 926-4600 (Fax)
christophermeeks@wncwlaw.com

/s/Christopher C. Meeks
Christopher C. Meeks
Georgia Bar Number 371020
*Attorney for Plaintiff*