IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARYLAND CASUALTY      :
COMPANY,               :
                       :
        Plaintiff,     :
                       :
v.                     :        CIVIL ACTION FILE
                       :        NO. 1:13-cv-3056-TWT
SALON AVENUE SUITE 2; SALON:
AVENUE SUITES, INC.; MARK :
ALLEN STORCH; JULIETTE  :
COLON; ELIZABETH B.     :
BARRON; KARI BENEDICT;  :
HEATHER BOWEN; NANCY    :
CLARK; DONNA McRAE;     :
KATHERINE MILLER; MARY  :
ROE and JANE DOE        :
                       :
        Defendants.    :

## SALON AVENUE SUITE 2, SALON AVENUE SUITES, INC., MARK ALLEN STORCH and JULIETTE COLON'S RESPONSE TO MARYLAND CASUALTY COMPANY'S ("MCC") MOTION FOR SUMMARY JUDGMENT

Come Now the above-named defendants and respectfully submit the following:

### FACTS

Mark Storch and Juliette Colon are husband and wife with two children.

Depo. Colon, p. 12.   Colon is employed as an executive for Servcorp in the

1

executive suites business. *Id.*, p. 11. Storch operated two salon locations using the same model as executive suites where private office or suites are rented on a temporary basis to beauty professionals. *Id.*, p. 14.

Colon had no involvement in their management or operation. *Id.*, p. 14. Although president and an owner of the corporation, Colon had no supervisory authority over Storch, and no role in their management or operation. *Id.*, p. 14-17.

Colon was not aware of the installation by Storch of surveillance camera(s) at the salon locations. It was not until July 27, 2012, when the police arrived, that Colon became aware of the camera(s). *Id.*, pp. 17-18; 20.

The underlying tort complaints do not allege or contend that Colon installed, approved, knew about, participated in, abetted, concealed, etc. the camera(s). Rather, plaintiffs allege that as part of her duties as owner and officer, Colon failed to adequately supervise and/or manage Storch so as to prevent the alleged illegal surveillance. See Exhibits 3-11 to MCC Motion.

Even assuming that the allegations of illegal surveillance by Storch are true (which allegations are disputed and denied), Defendants Salon(s) and Colon are innocents who knew nothing about and did not participate in surveillance.

Prior to March 11, 2013, Storch did not receive any demands for payment of money from anyone who claimed to have been videotaped at either of the Salon locations.  Depo. Storch, p. 53.

## ARGUMENT AND AUTHORITY

Exclusions invoked by an insurer are strictly construed against the insurer as drafter of the insurance contract.  <u>Richards v. Hanover Ins. Co</u>., 250 Ga. 613 (1983).

1. <u>The Notice Issue</u>

MCC contends that these defendants did not timely comply with the policy's notice condition.

Section IV of the Commercial General Liability Conditions provides:

"2.     Duties in the event of occurrence, offense, claim, or suit

    a.     You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim."

The term "occurrence" is defined under the policy as "an accident."  The term "accident" is not defined under the policy.

An endorsement (Exhibit "A") to the policy amends the original policy by adding as follows:

      "d.    bodily injury" . . . will be deemed to have been known to have

           occurred at the earliest time when any insured . . . :

           1)  reports all, or any part, of the bodily injury or property

               damage to us or any other insurer;

           2)  receives a written or verbal demand or claim for damages

               because of the bodily injury . . . ; or

           3)  becomes aware by any other means that "bodily injury . . .

               has occurred or has begun to occur.

Exhibit "A," p. 2, d.(2) and (3).

     MCC contends that these defendants should have realized and anticipated that numerous tenants would eventually file claims for injury by reason of the discovery of allegedly hidden cameras on July 27, 2012.  MCC further contends that these defendants should have known that injury claims would arise based upon either or all of the following:  execution of a search warrant on the defendants' homes; Storch's arrest on August 10, 2013; and, tort plaintiff Mary Roe's refusal to sign a "lease termination and release agreement."  However, the reasonableness of an insured's failure to give notice sooner to the insurer has be assessed from the perspective of a reasonable person in the circumstances in which the insureds found themselves, not that of an omniscient having the benefit of full and accurate

information that emerged only later and with the benefit of hindsight.  Forshee, et al. v. Employers Mut. Cas. Co., 309 Ga.App. 621 (2011).

Forshee holds that sometimes there are events that a court may properly conclude as a matter of law that no reasonable person would think that a claim would arise from that event and, therefore, no notice of the event to the insurer is required.  In most cases, however, the reasonableness of a failure to give notice to the insurer is a question for the finder of facts.  It is the nature and circumstances of the incident and the immediate conclusions a reasonable person would draw that determines whether an insured has reasonable justification not to notify the insurer. Relevant circumstances include the nature of the event, the extent to which it would appear to a reasonable person in the circumstance of the insured that injuries resulted from the event, and the apparent severity of any such injuries.  The court also properly may consider whether anyone gave an indication that she intended to hold the insured responsible for resulting injuries, or that the insured offered compensation to the injured from the event.  Forshee, id.

Unquestionably, these defendants knew almost immediately that Storch faced criminal charges and probable prosecution arising from those charges. Storch was detained by the police on the date that the alleged hidden cameras were discovered.  Subsequently, the police impounded Storch's vehicle for the purpose

of conducting a search.  The police later obtained a search warrant and searched

Storch's home, taking with them all electronic devices.  Finally, Storch was

arrested, his probation revoked, and additional criminal charges filed against him

arising from the discovery of the cameras.  As a result, Storch retained an attorney

to represent him as to the criminal charges.  However, Storch did not consult or

hire, or even consider hiring, an attorney for civil litigation.  The need for such

representation never crossed his mind or that of Colon.

Defendant Colon communicated with all tenants following the discovery of

the cameras.  None of the tenants ever threatened that they were going to sue

anyone.  Depo. J. Colon, p. 34.  Ms. Colon recalls that, on the contrary, the tenants

stated that they were "very happy, that there was no issue."  Depo. J. Colon, p. 42.

In her conversations and communications with tenants concerning lease

terminations, none of the tenants advised that they sustained injury, were

contemplating litigation, or had consulted with an attorney.  It was not until "much

later" that Ms. Colon became aware that Mary Roe had retained an attorney.

Depo. J. Colon, p. 37.  It was in May, 2013 when the defendants were served with

the first lawsuit that they became aware that tenants were claiming injury as a

result of the camera incident.  Ms. Colon recalled receiving a written settlement

demand from Mary Roe's attorney, but does not recall when the demand was

received.  Depo. J. Colon, pp. 41, 44-46.  There is nothing in the court record that

suggests when the demand was received, or the circumstances of why a settlement

demand was made.  In fact, Ms. Colon testified that she could not recall whether

she received the demand letter prior or subsequent to service of the lawsuit in May,

2013.  Depo. J. Colon, pp. 41-42.

There exists no evidence, no fact, and no indication that these defendants

knew, or reasonably should have known, about the existence of injury that their

tenants would later claim.  It is certainly a fact question whether these defendants

acted as reasonable and ordinary prudent persons in failing to conclude that the

camera incident was a basis for possible injury claims.  As stated, in most cases,

the reasonableness of a failure to give notice is a question for the finder of fact.

Forshee, id.  These defendants had every right to believe that only criminal charges

against Mr. Storch, and not civil lawsuits against these defendants, would result.

"A trial court must make every effort to eliminate the distorting effects of hindsight

and to evaluate the conduct of the insured from the perspective of a reasonable

person in the same circumstances as those in which the insured found himself.

Forshee, id.

2. <u>The Damage Intentionally Inflicted Issue</u>

An insurance policy is a contract which obligates the insurer to defend claims asserting liability under the policy, even if groundless.  MCC contends that the injury to the unsuspecting women was expected or intended by Storch.  MCC states that "There is no doubt that Storch intended the harm he allegedly caused the underlying plaintiffs."  MCC Brief, p. 18.  However, Storch in his attached Affidavit states that he did not expect or intend to cause injury to any of the underlying plaintiffs.  Exhibit "B," Affidavit Storch.

Underlying Plaintiff Mary Roe testified in her deposition that "Storch had placed the camera a while ago as he suspected that a person that leased the space was doing some illegal stuff and his lawyer advised him to put the camera there."  Depo. Plaintiff Roe, p. 43-44, Exhibit "C."  Roe amended her complaint with the same allegations.  Amendment to Complaint, Exhibit "E."

Roe reconfirms Storch stating that he had much earlier placed the camera(s) to discover illegal activities at the business.  Once the illegal activity was discovered and addressed, Storch forgot about the existence of the camera(s).  Affidavit of Mary Roe, Exhibit "D."

Obviously, attorneys hired by MCC are defending these defendants in the underlying tort actions.  Thus, it seems highly probable that MCC's attorneys in

8

this declaratory judgment litigation would also be privy to this deposition testimony. However, no reference or mention of Ms. Roe's testimony is contained within MCC's Brief.

MCC contends that coverage does not exist because of the intentional actions by Storch in placing the camera. However, underlying Plaintiff Roe states that Storch told her he had "forgotten" about the camera. If this testimony were believed, a jury could certainly conclude that the camera remaining after its purpose was served was not intentional, but rather the result of negligence. "A deliberate act, performed negligently, is an accident if the effect is not the intended or expected result." American Empire Surplus Lines Ins. Co. v. Hathaway Development Co., Inc., 288 Ga. 749 (2011). A complaint on its face may show no coverage, but there may exist facts adduced through discovery, affidavits, and depositions, etc. that place the claim within the policy coverage. Such is the case here.

3. The Issue of Personal and Advertising Injury, and Juliette Colon

MCC contends that its coverage providing "personal and advertising injury" is inapplicable as there are no allegations in the underlying lawsuits of damages arising out of Salon's businesses. The personal and advertising injury liability coverage provides that coverage exists where there is an "invasion of the right of

private occupancy of a room, dwelling, or premises that a person occupies,

committed by or on behalf of its owner, landlord or lessor.  See MCC Policy, CGL

coverage, p. 15, Section V-Definitions, No. 14.c.

Colon contends that she is entitled to coverage, or at a minimum entitled to

legal defense, as an officer of Salon as to any allegation that she failed to

adequately supervise or manage Storch.

The provisions concerning "who is an insured" state as follows:

"If you are designated in the Declarations as: . . . (d) an organization other

than a partnership, joint venture or limited liability company, you are an insured.

Your "executive officers" and directors are insureds, but only with respect to their

duties as your officers or directors.  Your stockholders are also insureds, but only

with respect to their liability as stockholders."  "Employees other than officers and

directors may be insured, but only for acts within the scope of their employment by

you or while performing duties related to the conduct of your business."  See MCC

Policy, CGL coverage, p. 8, Section II-Who Is An Insured, Nos. 1.d. and 2.a.

Salon is a named insured.  Ms. Colon was an officer of Salon and therefore

an insured for purposes of any claim that she failed to adequately supervise

Mr. Storch, failed to warn sub-tenants of Salon, and/or failed to engage in similar

acts.  These defendants agree that Colon would not be an insured to the extent that

she was involved in the recording and/or distribution of material showing

customers in various stages of undress since such activity was not a legitimate part

of Salon's business.  However, defendants are not aware of any such type of

allegation against Colon.

4.  <u>The Issue of Storch's Fifth Amendment Privilege</u>

Criminal charges remain pending against Storch.  During his deposition, Storch,

on the advice of his attorney, refused to answer.

The Fifth Amendment, which may be invoked in civil as well as criminal

actions, shields against compelled self-incrimination, not legitimate inquiry, in the

truth-seeking process.  The general rule is that there is no unconstitutional

infringement of the Fifth Amendment privilege by forcing an individual to risk

disadvantage in a civil case by refusing to provide material facts for fear of self-

incrimination in a pending criminal case.  <u>Boxter v. Palmigiano</u>, 425 U.S. 308,

317-318 (1976).

However, an exception to the general rule has been recognized in cases

where an individual who is a defendant in pending civil and criminal cases.  "A

grant of summary judgment merely because of the invocation of the Fifth

Amendment would unduly penalize the employment of the privilege.  United

States v. White, 589 F.2d 1283 (Headnote 12)(1979).

Storch affirmatively states that he will answer fully all questions to which he asserted his Fifth Amendment privilege after the pending criminal proceedings and the danger of self-incrimination have terminated.  Exhibit "B," Affidavit Storch.

WHEREFORE, these defendants assert that factual issues exist so as to preclude the grant of summary judgment to MCC such that MCC's motion must be DENIED.

Respectfully submitted, this 4th day of August, 2014.

/s/ J. Blair Craig, II
Georgia Bar No. 192850
Attorney for Defendants Salon Avenue Suite 2;
Salon Avenue Suites, Inc.; Mark Allen Storch
and Juliette Colon

Wood & Craig, LLC
1201 Peachtree Street, N.E., Suite 1700
Atlanta, GA 30361
(404) 888-9962
(404) 759-2326
blair@woodcraig.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 4, 2014, I electronically filed the foregoing SALON AVENUE SUITE 2, SALON AVENUE SUITES, INC., MARK ALLEN STORCH and JULIETTE COLON'S RESPONSE TO MARYLAND CASUALTY COMPANY'S (MCC) FOR SUMMARY JUDGMENT with the Court using the CM/ECF system which will automatically send E-mail notification of such filing to the following attorneys of record:

Seth Friedman
sethfriedman@wncwlaw.com

Christopher Meeks
christophermeeks@wncwlaw.com

Richard G. Farnsworth, Esq.
RGF56@hotmail.com

E. Brian Watkins, Esq.
brian@ebrianwatkinslaw.com

Albert Maitland Yates, III, Esq.
tmy@kaufmanlaw.net

/s/J. Blair Craig, II
J. Blair Craig, II
Georgia Bar No. 192850

WOOD & CRAIG, LLC
1201 Peachtree Street, N.E., Suite 1700
Atlanta, Georgia  30361
(404) 888-9962; (404) 759-2326 (Fax)
blair@woodcraig.com

*Attorney for Defendants Salon Avenue Suite 2,*
*Salon Avenues Suites, Inc., Mark Allen Storch and Juliette Colon*