IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARYLAND CASUALTY
COMPANY,

   Plaintiff,

     v.

SALON AVENUE SUITE 2, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:13-CV-3056-TWT

**OPINION AND ORDER**

This is a declaratory judgment action regarding an insurance coverage dispute. It is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 83] and the Defendants' Motion to Strike the Plaintiff's Motion for Summary Judgment [Doc. 88]. For the reasons stated below, the Plaintiff's Motion for Summary Judgment is GRANTED. The Defendants' Motion to Strike is DENIED.

## I. Background

### A.  Underlying Facts

The Defendants Mark Allen Storch and Juliette Colon have been married since March 6, 2009.[1] Storch spent from May 2004 to December 2008 in prison for assault with attempt to rape and cocaine possession.[2] He is also a registered sex offender.[3] Colon has been aware of Storch's criminal history since before their marriage.[4] In late 2009, Storch and Colon began developing a business to lease private space to beauty professionals.[5] The business is called Salon Avenue Suite 2 and Salon Avenue Suites, Inc. ("Salon").[6] Storch and Colon are the only officers and owners of Salon.[7] Initially, Storch managed the daily operations of Salon.[8] It has two locations: one at 2550

---

[1] Pl.'s Statement of Material Facts ¶ 7.

[2] Id. ¶ 1.

[3] Id. ¶ 2.

[4] Id. ¶ 5.

[5] Id. ¶ 8.

[6] Id. ¶ 9.

[7] Id.

[8] Id. ¶ 13.

Sandy Plains Road in Marietta, Georgia, and one at 3120 Loring Road in Acworth, Georgia.[9]

Several of the beauty professionals renting space from Salon performed services that required customers to be nude or partially nude.[10] On July 27, 2012, Mary Roe, one of the tenants, was waxing Jane Doe's genitals when they noticed a camera hidden in the ceiling.[11] Roe called the police.[12] Storch then arrived on the premises and confronted Roe about the camera.[13] Roe alleges that Storch removed a laptop computer from the utility closet and placed it in his car.[14] When the police arrived, they questioned Storch and impounded his car.[15] Later that evening, the police searched Storch and Colon's home pursuant to a warrant.[16] Following the search, the police removed essentially all computerized devices from the home.[17]

---

[9] Id. ¶¶ 11, 12.

[10] Id. ¶¶ 10, 20.

[11] Id. ¶ 19.

[12] Id. ¶ 22.

[13] Id. ¶¶ 23, 24.

[14] Id. ¶ 25.

[15] Id. ¶ 26.

[16] Id. ¶ 27.

[17] Id.

Colon knew that cameras had been discovered on July 27, 2012.[18] She understood that the police were accusing Storch of invasion of privacy.[19] On July 29, 2012, two days after the discovery of the cameras, Colon sent a letter to all tenants "apologiz[ing] for any inconvenience, confusion or frustration based on [the] events."[20] Colon informed all the tenants that they could leave.[21] All but five tenants left immediately.[22] Colon additionally attempted to obtain a written liability release from Mary Roe after Ms. Roe moved out.[23] Given the events, Storch and Colon hired someone else to run the Salon locations because they decided "it wasn't prudent for [Storch] to go back there."[24]

On August 12, 2012, Storch was arrested for unlawful surveillance.[25] Colon believed that Storch's arrest could result in criminal charges related to the cameras.[26]

---

[18] Id. ¶ 28.

[19] Colon Dep. at 23.

[20] Pl.'s Statement of Material Facts ¶ 29.

[21] Id. ¶ 30

[22] Id. ¶ 31.

[23] Id. ¶¶ 29, 30.

[24] Colon Dep. at 33.

[25] Pl.'s Statement of Material Facts ¶ 37.

[26] Colon Dep. at 34-35.

Storch's probation was revoked on October 11, 2012, based on these events.[27] He remained incarcerated until mid-November 2012.[28] At some point during this time, Colon received a demand letter from Ms. Roe for $500,000.[29] She admits to ignoring the letter.[30]

Between February 1, 2013, and July 16, 2013, eight women (collectively, the "Underlying Plaintiffs") filed suit against Salon, Storch, Colon, and others regarding the presence of hidden cameras at Salon locations.[31] The Underlying Plaintiffs Doe and Roe made allegations based on the presence of a hidden camera at the Sandy Plains location above Ms. Roe's suite.[32] The Underlying Plaintiffs Elizabeth Barron, Kari Benedict, Heather Bowen, Nancy Clark, Donna McRae, and Katherine Miller made claims based on cameras in the restroom at the Loring Road location.[33] The complaints allege invasion of privacy, intentional infliction of emotional distress, as

---

[27] Pl.'s Statement of Material Facts ¶ 39.

[28] Colon Dep. at 26.

[29] Id. at 45-46.

[30] Id. at 43.

[31] Pl.'s Statement of Material Facts ¶ 40.

[32] Id. ¶¶ 18, 19.

[33] Id. ¶ 41.

well as negligent hiring or supervision.[34] Each of the Underlying Plaintiffs claims that she suffered harm as the result of Storch's intentional criminal conduct of placing the cameras without permission.[35] Storch was also indicted on 25 felony counts of unlawful surveillance related to the hidden cameras.[36] The criminal prosecution remains pending.[37]

### B. Insurance Coverage

The Plaintiff Maryland Casualty Company ("MCC") issued insurance policies to Salon for the relevant time periods.[38] The policies cover Salon as well as its officers and directors when acting within the scope of their duties.[39] The policies contain a notice condition precedent. As the insured, Salon was required to provide notice "as soon as practicable" of any "occurrence" or "offense" that might result in a claim.[40] Additionally, Salon had to forward any demand letters to MCC immediately.[41] Prior

---

[34] Id. ¶ 45.

[35] Id. ¶ 43.

[36] Id. ¶ 46.

[37] Id. ¶ 47.

[38] Id. ¶ 51.

[39] Id. ¶ 53.

[40] Id. ¶ 54.

[41] Id.

to March 11, 2013, no one informed MCC about any claims related to the hidden cameras.[42]

Coverage A of the policy provides coverage for "bodily injury" or "property damage" caused by an "occurrence."[43] Coverage B insures against "personal and advertising injury" caused by an offense arising out of Salon's business.[44] The Barbers and Beauticians Endorsement covers damages caused when providing or failing to provide barbers or beauticians services.[45] MCC filed this declaratory judgment action, alleging that it is not required to defend the Defendants under the policies. MCC now moves for summary judgment. It first alleges that the notice condition of the policy was not met. Even if the condition was met, however, MCC alleges that the policy provides no coverage for the Defendants here.

## II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and

---

[42] Id. ¶ 50.

[43] Id. ¶ 56.

[44] Id. ¶ 57.

[45] Id. ¶ 58.

that the movant is entitled to judgment as a matter of law.[46] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[47] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact.[48] The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.[49] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[50]

### III. Discussion

#### A. The Defendants' Motion to Strike

In connection with its motion for summary judgment, the Plaintiff offers the affidavit of Matthew Combest. The Defendants move to strike paragraph 7 of that affidavit.[51] They allege that the statements in that paragraph are based on documents

---

[46] FED. R. CIV. P. 56(c).

[47] Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

[48] Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

[49] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

[50] Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

[51] Defs.' Mot. to Strike, at 1.

not attached to the affidavit, not based on personal knowledge, and are an improper expert opinion.[52] Pursuant to the 2010 Amendments to the Federal Rules of Civil Procedure, motions to strike are not the proper method for challenging the admissibility of evidence on summary judgment.[53] Instead, a party should object to the evidence, and the court will determine which evidence is inadmissible. The court may then disregard it.[54] Before considering the Plaintiff's motion for summary judgment, this Court must determine whether it may consider paragraph 7 of the Combest Affidavit.

First, paragraph 6 of the Combest Affidavit indicates that his opinion is based on the pleadings in the underlying lawsuits, MCC's claim records, and the depositions of Mark Storch and Juliette Colon.[55] All of these documents are attached to the Plaintiff's motion. Second, paragraph 7 is based on personal knowledge as required. Mr. Combest is a claims representative.[56] His affidavit testimony is based upon his review of documents as part of his job. Third, paragraph 7 does not constitute

---

[52] Id. at 1-2.

[53] FED. R. CIV. P. 56 advisory committee's note of 2010.

[54] FED. R. CIV. P. 56(c)(2).

[55] Combest Aff. ¶ 6.

[56] Id. ¶ 5.

inadmissible hearsay. It is based on the underlying complaints and depositions.[57] The parties actually stipulated that these documents could be cited and referenced in motions for summary judgment.[58] Furthermore, statements of a party are not hearsay when offered against that party.[59] The statements here are all made by the Defendants and offered against the Defendants. They are therefore not hearsay. Finally, there is no indication that the Plaintiff is offering Mr. Combest as an expert. Paragraph 7 is not an improper expert opinion. The Defendants' Motion to Strike is denied. The Court will consider the entire Combest Affidavit.

### B. The Plaintiff's Motion

The Plaintiff moves for summary judgment, contending that it has no duty to defend or indemnify Salon, Storch, or Colon. As a general matter, if there is no duty to defend, there is no duty to indemnify.[60] This Court will first address whether MCC

---

[57] Id. ¶ 6.

[58] Joint Notice of Filing and Stip. as to Redactions and Authenticity, at 4 ("The Parties anticipate that one or more of the attached documents will be used as part of their motions for summary judgment or responses and replies to same in this lawsuit. Thus, the Parties hereby stipulate and agree that the attached documents can be referenced, cited, or used in the Parties' respective summary judgment filings in this lawsuit.").

[59] FED. R. EVID. 801(d)(2).

[60] See, e.g., Shafe v. American States Ins. Co., 288 Ga. App. 315, 317 (2007) ("[A]n insurer's duty to defend is broader than its duty to indemnify."); Allstate Ins. Co. v. Harkleroad, No. 409CV011, 2010 WL 2076941, at *3 (S.D. Ga.

has a duty to defend. An insurer must defend its insured against any claim that potentially falls within the scope of its policy.[61] The court looks "to the allegations of the complaint to determine whether a claim covered by the policy is asserted."[62] If the complaint is even arguably covered by the policy, there is a duty to defend.[63]

1. **Notice Condition Precedent**

The Plaintiff first moves for summary judgment on the ground that the Defendants failed to comply with the notice condition of the policy.[64] If an insured fails to give notice according to the terms of the policy and does not provide justification, the insurer has no duty to defend.[65] Usually, the question of whether a

---

May 24, 2010) ("However, if it is found that Allstate does not have a duty to defend on a claim, it will likewise not be required to indemnify the insureds if they are ultimately held liable for that claim.").

[61] Shafe, 288 Ga. App. at 317.

[62] Nationwide Mut. Fire Ins. Co. v. Somers, 264 Ga. App. 421, 424 (2003).

[63] Id.

[64] Pl.'s Mot. for Summ. J., at 11.

[65] Lankford v. State Farm Mut. Auto. Ins. Co., 307 Ga. App. 12, 14 (2010).

notice provision has been met is one for the jury.[66] But, "an unexcused significant delay may be unreasonable as a matter of law."[67]

In determining whether an insured gave timely notice, courts must determine what the insured "knew, or reasonably should have known, about the existence or severity of the injury."[68] The court must consider the "nature and circumstances" of the event.[69] Additionally, it is proper to consider "whether anyone gave an indication that he intended to hold the insured responsible . . . and the extent to which the insured acknowledged the likelihood that a claim could arise from the even, either by offering compensation to the injured person or asking him to sign a release."[70] Courts applying Georgia law have found delays as short as four months unreasonable as a matter of law.[71]

---

[66] Canadyne-Georgia Corp. v. Continental Ins. Co., 999 F.2d 1547, 1555 (11th Cir. 1993).

[67] Id. (internal quotation marks omitted).

[68] Forshee v. Employers Mut. Cas. Co., 309 Ga. App. 621, 623 (2011).

[69] Id. at 624.

[70] Id.

[71] Hathaway Dev. Co., Inc. v. Illinois Union Ins. Co., 274 Fed. App'x 787, 790-91 (11th Cir. 2008) (finding delays of four, five, and eight months unreasonable as a matter of law); Travelers Indem. Co. of Conn. v. Douglasville Dev., LLC, No. 1:07-cv-0410-JOF, 2008 WL 4372004, at *3-4 (N.D. Ga. Sept. 19, 2008) (four months unreasonable); Cotton States Mut. Ins. Co. v. International Surplus Lines Ins.

Here, the notice condition requires notice "as soon as practicable of an 'occurrence' or an offense which *may result* in a claim," notice as soon as practicable "if a claim is made or suit is brought," and immediate forwarding "of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.'"[72] The Defendants failed to give timely notice of events that could have, and ultimately did, result in a claim. They also failed to immediately forward a demand letter. Because the Defendants did not comply with the notice conditions of the policy, MCC has no duty to defend.

Although Storch and Colon claim they were unaware that any civil claims could arise from the incident,[73] the facts here do not support that assertion. In the case on which the Defendants rely, Forshee, a woman fell at a gas station, refused medical attention, walked to her car on her own, and never gave her name to the owner.[74] There, the court of appeals found that an issue of fact existed regarding whether it was

---

Co., 652 F. Supp. 851, 856 (N.D. Ga. 1986) ("The Georgia courts have repeatedly held that where no valid excuse exists, failure to give written notice for periods in the range of four to eight months is unreasonable as a matter of law.") (internal citations omitted); Allstate Ins. Co. v. Edwards, 237 F. Supp. 195, 196 (N.D. Ga. 1964) (finding nine month delay unreasonable); Bituminous Cas. Corp. v. J.B. Forrest & Sons, Inc., 132 Ga. App. 714, 716-17 (1974) (four month delay unreasonable).

[72] Pl.'s Mot. for Summ. J., Ex. 16, p. 11.

[73] Defs.' Br. in Opp'n to Pl.'s Mot. for Summ. J., at 6.

[74] Forshee v. Employers Mut. Cas. Co., 309 Ga. App. 621, 621-22 (2011).

reasonable for the owners to fail to report the incident at the time it happened.[75] On the other hand, where the insureds witnessed the accident, this Court held that it was unreasonable to delay in notifying the insurer.[76]

Here, Storch and Colon had ample evidence supporting the existence of a claim. First, both Storch and Colon were aware of police involvement.[77] Second, Colon attempted to obtain a liability release from one tenant and apologized to other tenants.[78] The Forshee court explicitly noted that asking for a liability release indicates knowledge of a potential claim.[79] Colon also recognized that it would be imprudent for Storch to continue his management duties.[80] These facts all indicate that Salon knew or reasonably should have known that the discovery of the hidden cameras "may result in a claim." That knowledge triggered the duty to notify, which was not met until nearly eight months later. An eight month delay is unreasonable as a matter of

---

[75] Id. at 625-26.

[76] Brit UW Ltd. v. Hallister Prop. Dev., LLC, No. 1:11-cv-4396-JEC, 2014 WL 988822, at *7 (N.D. Ga. Mar. 13, 2014).

[77] Pl.'s Statement of Material Facts ¶¶ 26, 28, 37.

[78] Id. ¶¶ 29, 30.

[79] Forshee, 309 Ga. App. at 624.

[80] Colon Dep. at 33.

law. Additionally, Colon admits that she received a demand letter from Mary Roe.[81] She further admits that she never forwarded the letter to MCC.[82] Salon therefore failed to comply with the requirement to immediately forward all demands.

### 2. Coverage Under the Policies

Even assuming the Defendants gave timely notice, the Plaintiff is still entitled to summary judgment. Under Georgia law, the party seeking insurance coverage bears the burden of proving that coverage exists.[83] When interpreting insurance policies, the court must give full effect to the plain meaning of unambiguous terms.[84]

#### a. Coverage A

The events here are not even arguably included under Coverage A. Coverage A provides that MCC "will pay those sums that the insured becomes legally obligated to pay because of 'bodily injury' or 'property damage' to which this insurance applies."[85] "Bodily injury" is defined under the policy as "bodily injury, sickness or

---

[81] Id. at 45-46.

[82] Id. at 43.

[83] Chix v. Georgia Farm Bureau Ins. Co., 150 Ga. App. 453, 453-54 (1979).

[84] Continental Cas. Co. v. H.S.I. Fin. Servs., Inc., 266 Ga. 260, 261 (1996).

[85] Pl.'s Mot. for Summ. J., Ex. 16, p. 1.

disease sustained by a person."[86] It also includes mental distress resulting from bodily injury.[87] Georgia law also recognizes that "bodily injury" requires some physical harm.[88] It is undisputed that none of the underlying lawsuits allege any physical harm or injury.[89] Because no physical harm is alleged, Coverage A cannot apply.

   b.   **Coverage B**

Coverage B provides insurance for "personal and advertising injury" arising out of the insured's business.[90] In relevant part, "personal and advertising injury" is defined by the policy as injury arising out of "invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor" and "[p]ublication, in any manner, of material that violates a person's right of privacy."[91] The underlying complaints allege that Storch intentionally recorded and published images of the women in varying states of undress.[92] The Defendants concede that recording or distributing customers

---

[86]   Id. at Ex. 16, p. 13.

[87]   Id.

[88]   O'Dell v. St. Paul Fire & Marine Ins. Co., 223 Ga. App. 578, 579 (1996).

[89]   Pl.'s Statement of Material Facts ¶ 42.

[90]   Id. ¶ 57.

[91]   Id. ¶ 55.

[92]   Pl.'s Statement of Material Facts ¶ 43.

in various states of undress is not a legitimate part of Salon's business.[93] Any "personal or advertising injury" therefore cannot arise out of Salon's business. Because any such injury did not arise out of Salon's business, as required by the policy, Coverage B does not apply.

### c. Barbers Endorsement

No coverage exists under the Barbers Endorsement. That policy requires allegations of "damages caused by a negligent act, error or omission . . . in providing or failing to provide 'barbers and beauticians services.'"[94] "Barbers and beauticians services" are defined as "those activities customary in a beauty shop or barber shop."[95] The allegations here are unrelated to those services – they are allegations of surreptitious videotaping of women in various states of undress. The Barbers Endorsement does not provide coverage for the underlying claims.

### d. Negligent Hiring and Supervision Claims Against Colon

The Underlying Plaintiffs assert that Colon was negligent in allowing a known sex offender onto the Salon premises.[96] The policy does provide that Salon's officers

---

[93] Defs.' Br. in Opp'n to Pl.'s Mot. for Summ. J., at 10-11.

[94] Pl.'s Statement of Material Facts ¶ 58.

[95] Id.

[96] Pl.'s Statement of Material Facts ¶ 45.

and directors are insured under the policy, but only with respect to their duties as officers and directors.[97] Coverage A does not apply, as discussed, because no underlying Plaintiff asserts a claim for bodily injury. Similarly, because this claim is related to videotaping, not the provision of barbers services, the Barbers Endorsement does not provide coverage.

Coverage B does not require MCC to defend Colon. Where negligence is asserted as a concurrent cause of harm, an insurer does not need to provide coverage where the injury clearly arose out of conduct excluded by the policy.[98] Here, any injury clearly arose out of Storch's videotaping of the women. As discussed above, that videotaping is not insured under Coverage B. The Underlying Plaintiffs cannot add extra claims to bring an otherwise excluded loss within the policy.[99]

          e.      **Policy Exclusions and Storch's Fifth Amendment Privilege**

Because the Court finds that no coverage exists under the main text of the policy, there is no need to address the policy exclusions. Additionally, Storch asserts that MCC is not entitled to an adverse inference on the issues where he plead the Fifth

---

[97] Id. ¶ 53.

[98] Jefferson Ins. Co. of N.Y. v. Dunn, 269 Ga. 213, 215 (1998).

[99] Continental Cas. Co. v. H.S.I. Fin. Servs., Inc., 266 Ga. 260, 262 n.4 (1996) (denying coverage for a negligent supervision claim).

Amendment in his deposition.[100] Because the Court relies on the allegations in the underlying complaints and compares them to the insurance policy to determine whether MCC has a duty to defend, there is no need to grant MCC an adverse inference.

### IV. Conclusion

For the reasons stated above, the Defendants' Motion to Strike the Plaintiff's Motion for Summary Judgment [Doc. 88] is DENIED and the Plaintiff's Motion for Summary Judgment [Doc. 83] is GRANTED.

SO ORDERED, this 26 day of September, 2014.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[100] Defs.' Br. in Opp'n to Pl.'s Mot. for Summ. J., at 11-12.